IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ARMANDO S. RUIZ,                        )
                                        )
            Plaintiff,                  )
                                        ) Case Nos.    13-3045
v.                                      )
                                        )
EMMANUEL CLIFTON,                       )
                                        )
            Defendant.                  )
_____)

**MEMORANDUM AND ORDER**

Plaintiff Armando Ruiz was an inmate at the Shawnee County Jail. Plaintiff filed the instant action against defendant Emmanuel Clifton, a Shawnee County Corrections Officer, alleging that defendant violated his constitutional rights. Plaintiff alleges that defendant knowingly and willingly allowed another inmate to beat him up. This matter is before the court on defendant's Motion for Summary Judgment (Doc. 16). For the reasons stated below, the court finds that defendant is entitled to qualified immunity.

**I. FACTUAL BACKGROUND**

The undisputed facts in the summary judgment record are as follows: Plaintiff was incarcerated in Module C of the Shawnee County Jail. Defendant was a corrections officer on duty in Module C, which has two levels: 1) a lower level that includes a common dining/living area, inmate cells, and the correction's officer's desk, and 2) an upper level with inmate cells. Plaintiff's cell was located on the upper level of Module C.

On January 28, 2012 at approximately 5:10 p.m, defendant observed plaintiff verbally arguing with inmate Bryan Horn in the lower area of Module C about something that had spilled and was not cleaned up. Defendant observed no fighting or threats of physical violence between plaintiff and Horn

-1-

at that time. After the verbal dispute ended, plaintiff walked upstairs to his cell.[1] Sometime thereafter, Horn walked upstairs as well. Defendant testified that he assumed Horn was simply returning to his own cell. (*Id.* ¶ 5.)

According to surveillance video, which the court has closely reviewed, at 5:18:39 p.m., Horn arrived at the open door to plaintiff's cell on the upper level of Module C. (Doc. 17, Exhibit 2 (filed conventionally with the court).) Plaintiff raised both his arms, made fists, and kicked at Horn. (*Id.*) It appears to the court from the surveillance video that Horn did not even stop at plaintiff's cell; rather, plaintiff kicked Horn while Horn was in the hallway area. Horn then lunged at plaintiff, and the two went into plaintiff's cell and out of the view of the surveillance camera. (*Id.*) Two seconds later, at 5:18:41 p.m., defendant stood up from his desk on the lower level of Module C and reached for his radio while heading up the stairs. (*Id.*) Immediately upon observing that there was a fight, defendant called for assistance on his radio. (*Id.*) Eight seconds later, at 5:18:49 p.m., as defendant was headed up the stairs, two other inmates entered plaintiff's cell. (*Id.*) Eight seconds later, at 5:18:57 p.m., the inmates pulled Horn out of the plaintiff's cell. (*Id.*) Three seconds later, at 5:19:00 p.m., defendant had Horn in his custody, and the incident was over. (*Id.*) A total of twenty-one seconds elapsed between the first swing and the fight ending. (*Id.*) After the incident, defendant wrote a Shawnee County Jail Incident/Disciplinary Report regarding the incident involving plaintiff and Horn. (Doc. 17-3.)

Plaintiff claims that, during the verbal altercation between plaintiff and Horn over the spill, defendant was laughing and allowed the fight to continue. Plaintiff argues that defendant should have placed either himself or Horn on lockdown on the basis of what defendant witnessed in the common dining/living area. Defendant has testified under oath that:

- at no time did he laugh at or encourage the fighting between plaintiff and Horn;

---

[1] During non-lockdown hours, inmates are allowed to move about inside the module.

- in his experience working as a corrections officer, verbal disputes and arguments are very common, and few ever lead to fights or violence;

- he did not perceive any risk of harm to plaintiff because he thought plaintiff and Horn simply had a common dispute over a minor issue—a spill that had not been cleaned up—and that the dispute had been resolved;

- he did not believe the situation would escalate to violence or end in a fight because he observed that the two had separated, and it appeared that the dispute between the two inmates had been resolved;

- prior to the verbal dispute, he was not aware of any animosity between plaintiff and Horn;

- at no time did plaintiff inform him that he felt physically threatened by or in danger of Horn;

- at no time did any other person inform defendant that plaintiff needed protection from Horn; and

- he was not aware of any history of Horn attacking other inmates.

(Doc. 17-2 ¶¶ 8–14.) Defendant states that, had he perceived plaintiff was in danger of physical harm, he would have taken steps to place plaintiff in protective custody. (*Id.* ¶ 15.)

Plaintiff submits an affidavit from fellow inmate Fredrick Elman, who stated that Horn threatened to kill and beat up plaintiff while defendant sat back in his chair and did nothing. (Doc. 25 at 16, ¶ 2.) The court notes that nowhere in plaintiff's Complaint (Doc. 1) or in the Pretrial Order (Doc. 21) does plaintiff claim that Horn threatened to kill plaintiff, and Elman's affidavit includes no statement as to whether defendant actually heard this threat.

Similarly, in his response to defendant's summary judgment motion, plaintiff alleges for the very first time that, following the verbal argument, and before he went upstairs, he stopped by defendant's desk and asked him "when are you going to stop this?" (Doc. 25 at 6–9.) The court deems

these new allegations as an attempt by plaintiff to improperly create an issue of fact. *See Hanson v. Beloit Newspapers, Inc.,* No. 94–4023 SAC, 1995 WL 646808, at *11 n.1 (D. Kan. Sept. 15, 1995) ("Parties cannot amend their complaints simply by alleging new facts and theories in their memoranda opposing summary judgment."); *see also Hullman v. Board of Trustees of Pratt Com. College,* 950 F.2d 665, 668 (10th Cir. 1991) (citation omitted) ("[I]ssues not preserved in the pretrial order have been eliminated from the action, and a party who did not preserve an issue may not use it in resisting a motion for summary judgment.").

## II. LEGAL STANDARDS

Summary judgment is appropriate when there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A movant that does not have the burden of persuasion at trial has the initial burden of "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If the movant makes this showing, the burden shifts to the nonmovant to set forth facts from which a rationale trier of fact could find for the nonmovant. *Id.*

Defendant claims he is entitled to qualified immunity. Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity provides government officials immunity from suit as well as from liability for discretionary acts. *See Mitchell v. Forsyth,* 472 U.S. 511 (1985). When a defendant asserts a qualified immunity defense at the summary judgment stage, the burden shifts to plaintiff to show that defendant violated a constitutional right and the law was clearly established at the time of the alleged violation. *Vondrak v. City of Las Cruces,* 535

F.3d 1198, 1204 (10th Cir. 2008). To satisfy this burden, plaintiff must show that, when viewed in the light most favorable to plaintiff, the record establishes that defendant violated a constitutional right and that the right was clearly established at the time of the alleged violation. *See Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1312 (10th Cir. 2002). If plaintiff does so, the burden shifts back to defendants to prove that no genuine issues of material fact exist and that defendant is entitled to judgment as a matter of law. *See id.*

### III. ANALYSIS

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 828 (1994) (quotation omitted). Not every injury suffered by a prisoner, however, gives rise to constitutional liability. *Tafoya v. Salazar,* 516 F.3d 912, 916 (10th Cir. 2008). "To establish a cognizable Eighth Amendment claim for failure to protect an inmate from harm by other inmates, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Smith v. Cummings,* 445 F.3d 1254, 1258 (10th Cir. 2006) (quotation and brackets omitted). Under the subjective component, the official must "actually be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Tafoya,* 516 F.3d at 916 (quotation omitted). If the official was unaware of the risk, "no matter how obvious the risk or how gross his negligence in failing to perceive it," his failure to alleviate it "is not an infliction of punishment and therefore not a constitutional violation." *Id.*

#### A. Objective Component: Substantial Risk

Plaintiff has failed to put forth evidence that the conditions under which he was incarcerated objectively posed a substantial risk of serious harm. The evidence in the summary judgment record

-5-

establishes that defendant heard plaintiff and Horn arguing over something that spilled. As testified to by defendant, which the court independently believes to be true, verbal disagreements are common among inmates, and most of those disagreements do not result in physical altercations. There is no evidence that Horn had previously been hostile to plaintiff, or to any other inmate, for that matter. Plaintiff presents no competent evidence that defendant heard Horn threaten to kill plaintiff or that plaintiff requested any action on the part of defendant, especially not protective custody. There is nothing in the record indicating the existence of a known or obvious risk that a fight would occur. *Jones v. Bernard*, 77 F. App'x 467, 470 (10th Cir. 2003).

The evidence is that, after the verbal altercation apparently ended, plaintiff went upstairs to his cell, and Horn "later went up to [p]laintiff's cell." (Doc. 25 ¶ 11.) This evidence does not establish that defendant's actions, or inactions, posed a substantial risk of serious harm to plaintiff. *Szymanski v. Benton*, 289 F. App'x 315, 320 (10th Cir. 2008) ("We decline to adopt a general rule imposing on prison guards an affirmative duty to inquire privately whether a prisoner fears for his safety . . . .").

Even more significant to the court is the video surveillance, which clearly shows that it was plaintiff who chose to make the altercation physical when he kicked at Horn. The court does not believe that the Eighth Amendment's duty to protect is triggered when plaintiff started, and therefore could have prevented, the physical altercation that resulted in plaintiff's physical injuries. *See Santiago v. Walls,* 599 F.3d 749, 768 (7th Cir. 2010) (holding that inmate cannot recover on a claim prison official was deliberately indifferent to a risk of harm posed by another inmate when the plaintiff started the fight).

### B.  Subjective Component:  Deliberate Indifference

The subjective component of a deliberate indifference claim requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment."

*Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1196 (D. Kan. 2008) (citing *Farmer*, 511 U.S. at 838). Before liability can be imposed, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

In this case, plaintiff characterizes defendant's actions as irresponsible (Doc. 21 ¶ 4.a.2) and negligent (*Id.*; Doc. 1 ¶ C.2), yet deliberate indifference requires more than a showing of simple or even heightened negligence. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (citing *Board of County Commrs. v. Brown*, 520 U.S. 397, 407–10 (1997)). Regardless of the wording, plaintiff has failed to put forth evidence that defendant subjectively knew plaintiff faced a substantial risk of harm or that he was aware of facts on which such an inference could have been drawn. As set forth above, defendant witnessed plaintiff and Horn having a verbal dispute over something that had spilled. In defendant's experience as a corrections officer, verbal disputes are common among inmates, and few lead to violence. Defendant perceived this dispute as minor.

Even if defendant had heard Horn threaten plaintiff, threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm. *Prater v. Dahm*, 89 F.3d 538, 541–42 (8th Cir. 1996). Indeed, the pleadings and evidence in this case do not suggest a reason for defendant to be alarmed that a physical fight would ensue. During the verbal spat, defendant observed no physical violence, and after the spat ended, the two inmates physically separated to different areas of the module on their own. Indeed, plaintiff admits that he had walked away from Horn and walked back upstairs to his cell. (Doc. 25 ¶ 8.) Plaintiff also admits that some time had elapsed between the argument in the dayroom and Horn coming up the stairs to plaintiff's cell. (*Id.* ¶ 11.) Plaintiff and Horn had no history of animosity with each other, and Horn did not have a violent history at the correctional facility.  Plaintiff did not request protective custody. There are

-7-

no peculiar circumstances here that would lead defendant to become subjectively aware that a verbal altercation in the dining area "over spilled milk" would later lead to a physical fight on the second level of the module, and there is no evidence that defendant actually drew such an inference. The court finds defendant is entitled to qualified immunity and that summary judgment is, therefore, appropriate.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 16) is granted.

Dated this 16th day of October, 2014, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**